A.K.A. Foo Boy. On behalf of the Appalachians, Mr. Robert F. Fagan. On behalf of the Appalachians, Mr. Andrew T. Smith. Good afternoon, counsel. Justice Briquette is a member of this panel. He was unable to be here this afternoon. However, he will listen to the oral argument and participate in the deliberations with respect to this matter. Mr. Fagan. Good afternoon, your honors, counsel, Mr. Padley. May it please the court. Your honors, we believe that this matter had several problems on the trial court level, primarily procedural problems. In addition to those procedural problems, it is our contention that the statement at issue is not defamation per se. And further, even if it is considered to be defamation per se, that it is protected speech under the First Amendment to the United States Constitution. Counsel, excuse me, before we go any further, it is this court's obligation before looking at the merits of a case to examine its jurisdiction. Would you kindly inform the court how you believe we have jurisdiction under the facts, procedural aspects and facts of this case, please. From the circuit court level, your honor? Yes, to hear the appeal, to hear the merits. Your honor, I don't believe that the jurisdiction exists. I don't believe that the complaint on the circuit court level is a viable complaint against a known entity. And that was part of our argument to the trial court judge. The complaint, the second complaint that was filed in the state court was entitled Bill Hadley v. Subscriber Doe, I think also known as Fuboy. We believe under the Supreme Court case of Bogseth that that complaint in and of itself is a nullity and does not provide either subject matter jurisdiction and certainly not personal jurisdiction over any known defendant. That was pointed out to the trial court and we, meaning my client, was informed that a complaint had been filed in the circuit court when they received, when it received a notification of a subpoena that had been issued on the basis of that complaint to Comcast Media Holdings, which was the Internet service provider in the local area. Pursuant to federal law, Comcast Media Holdings notified its subscriber of the subpoena and informed my client that he had 10 days in which to either intervene at the trial court level or they would honor the subpoena. Because I had been retained when the case had been removed to federal court, I filed a motion to quash the subpoena, pointing out within that motion that we felt that the subpoena was issued on the basis of a nullity. But we did continue on and do some additional substitute arguments as well. So we don't believe that there is jurisdiction. Be that as it may, then, as I understand the record, what the trial court instructed was that the Rule 224 petition, I guess we'll call it petition, be made part of or count to of a two-count complaint. Is that correct? Yes, Your Honor, it is absolutely correct. And then what, I guess what I'm getting at is with regard to our jurisdiction, where is the final order? Is there another claim pending? I believe there was a transcript attached to one of the briefs that indicated that this issue was also addressed at the trial court level after the court had ruled. And so there was some discussion of that. Yes, Judge. We, the only substitute issue that we asked the trial court judge to rule on was indeed whether or not the complaint was a nullity and the subpoena should be quashed. Judge, the trial court judge suggested to the court that the court be allowed to amend their complaint, which again we believe was a nullity, adding a count to, which we believe for all intent and purposes was even a violation of Rule 224. Rule 224 plainly contemplates a separate action, a verified petition be filed prior to any substantive complaint, suggesting to the court that there is an unknown entity that exists and that the plaintiff requires discovery in which to find out, attempt to find out who that unknown entity is. Under Rule 224, the plaintiff has to provide the trial court with a viable set of allegations, which will prove to the trial court that it will, the allegations at least, will survive a 2615 motion to dismiss so that the court can balance the interests of the plaintiff in its pursuit, his pursuit of any alleged defamation with the First Amendment interests of any anonymous commentator. Counsel, was there a written 304A finding in this case by the trial court and was there one necessary? We believe, Judge, because we brought it to the attention of the trial court in attempting to decide how to frame this appeal, because we had what was essentially a 224 petition that was part of an amended complaint. It was our view that there is a cause for controversy still remaining on the trial court level. That's count one. That's count two, which was basically the same type of request that would have or should have been part of the verified petition under Rule 224. When we pointed this out to the trial court, my request was for a specific finding. I can't remember the specific rule. I think it was 304. I might be wrong here. 304A, asking for a specific finding, finding that we could take this to your honors as an immediately appealable issue, even though there was still a cause for controversy remaining on the trial court level. The transcript that I believe we provided to your honors suggests that there was some argument back and forth, but I anticipated the jurisdictional questions and problems and did not want to be faced with having to go back to the trial court in an attempt to try to figure out what the actual jurisdiction was. All right. So have the requirements of Supreme Court Rule 304A, which require a written finding that there's no just reason for delaying either multiple parties or multiple claims for relief, are involved in an action. Was that order entered? Judge, I believe that the order was entered, although quite frankly, I can't swear to it. I do know that the basis of the transcript was that the trial court judge did make a dual finding that this issue was immediately appealable, I believe, under 303 and under 304A. If I can find the place in the transcript. I have the place in the transcript, counsel, but there's no separate order that you know of apart from the transcript that you've attached. Is that right? There might be, Judge, but I can't swear to it one way or the other. Would you agree that that's necessary for our jurisdiction? I believe that the trial court's finding or transcript could stand if there isn't a written order to that effect. Because? He essentially made the decision. He just was not reduced to writing. Okay. Why don't you go ahead, counsel, with the rest of your argument? Thank you, Judge. So, Judge, basically, we believe that, as I suggested, that the procedural problems of this case are not just specifically as I've suggested. If the court interprets the amended complaint as a Rule 224 petition, it was actually filed after the statute of limitations has run. The statute of limitations issue, we believe, is something that also would preclude any additional... But that's not the standard under 224. Isn't it? Whether it survives a 2615 and a 2619? Correct, Judge. It's not. It's just that Rule 224 contemplates that the petition be filed within statute of limitations. And, in fact, there is case law that suggests that's why it exists, because it can be done quickly and it can be done before the statute runs, because the petition is something that the Rule plainly contemplates be done before the substantive complaint. What this hybrid, as the trial court suggested it is, suggests is that you have a Rule 224 petition in the form of Count 2, and that Count 1 is the exhibit in support of the petition. What we really have here is something that, quite frankly, shouldn't exist, Judge. But the Rule 224 petition was not filed until the statute of limitations on the substantive case had already run. But the complaint was filed within the statute of limitations, correct? The original complaint was filed in early January of 2012. That complaint got removed to federal court. That case got dismissed. And then the case attempted to be reinstated in the state court. And then the second complaint was filed, and then... Within the statute of limitations? The second complaint was filed, but we would argue that the relation back doctrine would go to the first complaint, which was filed in January of 2012. The petition, or the amended complaint, was not filed until about 10 or 15 days after the statute had run in 2013. And you're saying that did not relate back? No, the 224 petition certainly would not relate back, no, Judge. And you're saying, though, Count 1 of that second or amended complaint was really an exhibit to Count 2? Excuse me, why wouldn't the second complaint relate back, this amended complaint? Because the second complaint was a nullity from the date it was filed. It was Bill Hadley v. Subscriber Doe. And according to the Bogsat case, which I believe is still good law in the state of Illinois, it's a nullity. It's void ad initio. Well, but doesn't the case law indicate that if a complaint is filed against a fictitious person, it would be a nullity? But if there is a fictitious name, that's a different story. Well, Judge, I think here the answer to that whole argument is the existence of Rule 224. In other words, is there another citation to any other case in the state of Illinois that has a complaint which was a nullity? In other words, is there another case that has been initiated and found to have subject matter jurisdiction, a plaintiff v. a John Doe? We have two avenues in the state of Illinois to undercover or to reveal an unknown person or entity. That is the Respondent in Discovery Statute and Rule 224. Our stance is that the second complaint was void ad initio and the subpoena that was issued on its basis was void ad initio and throughout the entire litigation. The trial court could have ruled on motion to quash the subpoena based upon that complaint alone if the trial court felt that that complaint was a viable complaint. Obviously, the trial court felt it was not a viable complaint because it was suggested initially by Subscriber Doe based upon our arguments regarding the nullity of the complaint, that the appropriate course of action would be pursuant to Rule 224. I think where things got derailed is that the trial court either anticipating the statute of limitations problem or completely not understanding the statute of limitations. The fact that they were not understanding the specifics of Rule 224 allowed a 224 petition to be filed in the form of an amendment to what we believe was a nullity to begin with. We believe that the proper course of action was certainly Rule 224, but as a separate petition filed specifically to request the identity of Subscriber Doe. Once the court ruled on that, that would have been an immediately appealable order which we could have brought to the appellate court prior to any substantive complaint having been filed. That didn't occur. That nullity was amended with count two, which is the Rule 224 petition. Relief was granted by the trial court, we believe erroneously, and we were placed in the position that we were placed in, in an attempt to figure out how to get to the appellate court, which is what prompted that hearing that Your Honor has the transcript for. Do you wish to move on to some of the merits? The substantive arguments, Judge, are we believe that the actual statement itself at issue is not defamation per se. You have to look at the statement, Your Honor. We're going to give you additional time as we got things a little bit off track with regard to jurisdiction. So go ahead and address the merits, please, Counsel. Thank you, Judge. We believe that initially any court has to determine whether or not the statement at issue is defamation per se. Defamation per se has to be looked at at the time period that the statement was made. The statement was published in an Internet blog in the latter part of December of 2011. And isn't that the time that the whole national publicity surrounding Penn State was going on, and Coach Sandusky was at that time being charged with sexually abusing boys? Specifically, yes, Your Honor. It had been going on for approximately two months, and Your Honor was exactly correct. The statement was published in an Internet blog in December of 2011. And isn't that the time that the whole national publicity surrounding Penn State was going on, and Coach Sandusky was at that time being charged with sexually abusing boys? Well, what difference would it make if he were charged or convicted? That's really not an important point, is it, Counsel? It is absolutely an important point, as we pointed out in our brief, Judge. Why is that a critical element? Because in the state of Illinois, Your Honor, you cannot have defamation per se based upon criminal charges. We did cite the case, I believe. The case is... It's in our brief, Judge. Basically, it was a rape case, and there was an allegation of defamation per se by suggesting that somebody was a rapist by using the name of someone who was charged with rape. The outcome of that case was that you cannot have defamation per se based upon some basically just charges. So, in other words, in December of 2011, you had a person who was presumed innocent, and defamation per se has to stand on its own without any extrinsic facts whatsoever. So, in other words, anybody who read that commentary in the Internet blog, Hadley is another Sandusky waiting to be charged with rape. So, in other words, if a person's name was used to be exposed, they would have to know all of the details, which would then suggest that that was implicating Mr. Hadley in some type of crime. And that was just not the case at that time. Would that be considered as another category of defamation per se under fornication? I'm not going to say that it could be considered. I think it was defamation potentially per quad, but not per se, because it has to be universally known completely without innuendo or without any extrinsic facts that a Sandusky is somebody who molests children. And it just was not the case in December of 2011. He was presumed innocent. Can we consider the other news stories that were current at the time? No, I don't believe you can, Your Honor, because he was presumed innocent. He was not a convicted child molester. Right. Your Honor, even if the court does decide that this was defamation per se, it was still protected speech under the First Amendment. And that seems to be a big difference of opinion between subscriber doe and plaintiff. So just because it's labeled defamation per se, either as an allegation or a finding, does not mean that it is not protected speech under the First Amendment. The defamation statement has to be verifiable and it has to suggest objective facts. And quite frankly, there is no suggested facts that suggest or there is no facts that just Mr. Sandusky is guilty of defamation. Mr. Sandusky's name would suggest at that time a convicted child molester or child molestation. It has to be verifiable. There is nothing in the complaint which suggests any type of context for the statement at all. Now, counsel, you stress that in your brief, I think, because the statement was made on a blog in the Middle East, in the middle of a political campaign, and that the standard both locally and nationally had fallen so low that it was unlikely to have been taken seriously and therefore entitled and therefore was entitled to First Amendment protection. Yet we have no Illinois authority, do we, that would support that? Judge, that's why we cited that Gilbert case from the Ninth Circuit. What the Gilbert case did was it said, at least in answer to the court's first question, whether or not there were objectively verifiable facts that, about the plaintiff that could be gleaned from the statement. It's not, they looked at an analysis that looked at a core objective evidence. In other words, can the name itself be objectively verified or verifiable to be something that suggests child molestation, and it cannot. In addition, the other two parts of the analysis in direct response to Your Honor's question were the context. Look at the larger context and the smaller context. We suggested two contexts to the court in our response to the question. One of those was the national political climate and then the local political climate. That may not be the context that's correct. If you want to look at the context of the fact that this was an Internet blog, okay, you have to look at the context of the statement and the context of the actual story. In other words, the statement standing on its own without any type of context that you could, that help you glean what the intent was behind the statement or what the statement meant is somewhat meaningless. So in other words, if this statement were part of someone's paper on some issue, that paper would give you some context into what that statement might mean. The story that was presented on this Internet blog was completely, had nothing to do with Jerry Sandusky or with Empire School or with anything else. The specific comments underneath that story had absolutely nothing to do with each other. In other words, not only was the comment about Mr. Hadley being a Sandusky way to be exposed, but if you read the next couple of comments on the exhibit, they didn't even react to the comment that was made. In other words, there's no context at all. It's completely out there on its own. There's no way to determine whether or not this analogy to Sandusky has any relationship to Mr. Hadley as far as what it was that it meant. You have to have some additional facts to glean that. It was not universally known at the time. Well, are you saying that's not possible to have because it was on an Internet blog? I'm just saying, Judge, that the anonymity and the pseudonymity of Internet blogs are the modern equivalent of the bathroom wall. So anything goes. I mean, where do we draw the line, counsel? Don't people go on the Internet to get information as well? I would absolutely suggest that they do, but not in the commentary on newspapers that is written either by pseudonym or by complete anonymity. It's just like walking into a bathroom and reading a comment. How many people actually believe anything that they read there? How many people believe anything that they read in commentary to any newspaper article or, quite frankly, any blog commentary? Well, wouldn't it matter, for example, if the comment were posted on a page that was called, I don't know, Rants and Raves or Ripoff Reports or something like that as opposed to commentary on a blog that follows a newspaper article? No, I don't think so, Judge, because it's not like a letter to the editor of a newspaper. A letter to the editor has to meet certain standards that the editor and the editing board decide. There is none of that on an Internet blog. If you have to register, you can register with a completely false name. There's no double-checking other than maybe check to see whether the email address exists. So, in other words, there's no filter, no filter whatsoever. And, quite frankly, I think that's one of the reasons that, under New York Times v. Sullivan, Gatehouse Media Holdings has no liability towards what's there. And that's, of course, what the federal court found. You know, people who read these blogs and, quite frankly, everything on the Internet, I think one of the biggest problems that exists today is that there's not enough skepticism about the substantive matters that people go to look at. And that's a personal opinion. Of course, yes, but certainly not in the commentary, Judge. I have a more pointed question for you, and bear with me. Plaintiff points out in his brief that in one of your emails you said that, quote, Mr. Hadley needs to appreciate the truth is a defense to a defamation case or claim. The email also states that there is common knowledge in the community about some of those issues. And you suggest in your reply brief that you only meant to remind Plaintiff that he could expect some resistance to the suit. But your email goes further and suggests that Fuboy's post is backed up by common knowledge in the community. Doesn't this constitute an admission that he meant what he said in the past? I don't believe so, Your Honor, because, quite frankly, that email, in my opinion, should never have been incorporated in a court filing. That was a communication between counsel. That, quite frankly, happens all the time. I was shocked to see that it actually appeared in a court paper. Counsel, is there an overriding policy consideration here with this issue? I think there is, Your Honor, and I think that the trend is to protect the anonymity and pseudonymity of people who are commenting on specific things, certainly involving politics. This is a very, very, very cherished right in the United States and goes all the way back to pre-Revolutionary war times. We're not talking about two private individuals here, Judge, or a private individual. We're talking about a man who is running for political office. And the cherished right is the free exchange of ideas, whether they're anonymous or whether they're pseudonymous, whether they happen to be upsetting or whether they have to be more thoughtful and substantive. So are you saying the touchstone here is because there's a political figure involved? Yes, absolutely, Judge, absolutely, under both New York Times v. Sullivan and under the concept of the First Amendment. So if Mr. Hadley here were not a public figure, were not running for election, were not, I believe it was the city board, county board, whatever it was, that changes everything? I don't think it changes everything, Judge, but I think he would have a stronger argument if he was a private individual, back to, I think it was the Stone case. You know, you had private individuals there. This is a different animal, Judge. This goes back to New York Times v. Sullivan and the absolute seminal change in defamation law, where the reason you don't have Gatehouse having any liability whatsoever, this is political commentary, whether we like it or not, whether it was kind or unkind, whether it was completely outrageous or not. But isn't this statement, wasn't the statement tantamount to saying that Hadley had committed a crime? No, I don't think so, Judge. What crime? At this time, in December of 2011, what crime? The crime isn't even suggested in the complaint. It's assumed. And that's the problem, okay? This statement, without any extrinsic facts whatsoever, at this time, December of 20, we can't look back on it from our vantage point now. And even if we could, I would argue that it's not defamation per se. It's so far out of the public consciousness. So you're saying had he been convicted in December on that date, that then it would have been defamation? It would have been a stronger argument, but I would argue not even then, Judge. I do not think so, because it would have to be, again, universally known. And even though this had a lot of interest for a period of time, and quite frankly, I'm not sure how you'd even prove it, because how do you go back and prove what was universally accepted within the readership of this blog at that time? But it's been so out of the public consciousness right now, and historically, legally, how many names can you name, can you bring to mind that have come to be completely known universally as suggesting some type of specific crime? Possibly Ponzi, as I suggested in one of our briefs, calling someone a Van Gogh. It's so ambiguous. What are you suggesting by saying he's a Van Gogh, that he's a potential brilliant creative artist or not, who cuts off his ears without any type of ability to rein that in? Well, counsel, in this case, it was somewhat reined in because the statement, and then followed by, and I'm going to paraphrase here, just look out his front door at the elementary school. That's an extra line. Again, Judge, I beg to differ. Nothing about an elementary school. Well, Empire. Empire School, which is a street in Freeport. Empire School is a street? No, ma'am. You're saying there was not an elementary school called Empire? There is an elementary school on Empire Street called Empire School. But the statement by itself, without any more extrinsic facts, such as where does Mr. Hadley live? It says out his front door. Yes, but where does he live? Empire goes east-west. Well, if you can see it from his front door, I think clearly the inference is, unless he has x-ray vision, it's pretty close. But what hit? Are we talking about the street or the school? Nothing. Well, first of all, I thought it was conceded by both parties that this was an elementary school. And second, I thought the statement was, look at his vantage of Empire School from his front door. Words to that effect. Now, if I'm paraphrasing incorrectly, I apologize. Well, otherwise the statement itself, even forgetting about if it's defamatory or not, wouldn't make any sense, if you look at the first part of the statement. But again, it's the context. The street? I mean, internally. But how do you interpret it? In other words, there's probably more than one school on Empire Street in Freeport. It runs the whole east and west. But it's Empire School. I don't think so, ma'am, but you might be correct. Well, no, it says that it's Hadley as a Sandusky waiting to be exposed. Check out the view he has of Empire from his front door. Yes, ma'am. And Empire is a street that runs east-west the entire length of the city of Freeport. Well, okay. I know we've given you a lot of additional time, but you'll have time on rebuttal. Thank you, Judge. Okay. Thank you very much, counsel. Mr. Smith. If it pleases the court, much of F.U. Boyd's argument and the facts presented, first, are based on facts not of record. Second, ma'am. Counsel, forgive me for interrupting. May we address the jurisdiction issue first, please? Yes, Your Honor. Okay. Similar to Attorney Fagan's discussion or argument with Your Honors earlier about that, I do see that as an issue I can't recall exactly whether or not the trial court entered a specific 304A finding, but certainly the understanding at the time of the court's decision based on the part of the court's decision referenced the Rule 224, Supreme Court Rule 224, is that that gives this court jurisdiction upon the court's finding regarding the 224. I can't say for sure, and as that discussion was being had with counsel, I didn't bring my whole box that contains the entire file to see if there was a separate written order. I can't answer that question any better than Attorney Fagan. And do you believe, though, given the procedural context we were talking about, that is a two-count complaint that incorporated as count two the Rule 224 request, that it was needed? Do I agree that the 304? A finding was needed? Rule 224, and I think counsel at the trial level had actually cited a case specifically to that, and I think I had referred to that on behalf of the plaintiff as well, has jurisdiction in and of itself. So I don't know if there needs to be a separate 304A finding because of that automatic implication of Rule 224. So I believe this court has jurisdiction reference to the Rule 224 and the decision by the trial court. If that answers the question as best that I can without knowing whether or not we have a written order. Thank you. Our position is, Mr. Hadley's, is that much of the arguments of F. Euboy are smoke and mirrors. We spent two years just trying to proceed in court. We, of course, believe that this is a valid defamation per se action that was clearly filed within the statute of limitations period. That was told, and to answer your question or conversation with Mr. Fagan earlier, is clearly the, because the initial complaint, the original complaint was filed easily within the statute of limitations period, that the relation back doctrine does in fact apply here when the trial court directed plaintiff me to add a count regarding the Supreme Court Rule 224. The difficulty that we have had with this case is first and foremost, and this may be part of the jurisdictional question, is my position has been from day one that F. Euboy had no standing to file anything in the state court. The subpoena was issued to Comcast, a third party. I cited my brief to a couple of federal cases decided under Illinois law that are fairly recent, I believe, that says that a non-party cannot file a motion to quash or proceed on a motion to quash a subpoena directed to a third party. And that is not the case here. In this case, Comcast. Number two, Attorney Fagan, on behalf of F. Euboy, filed a special limited appearance. Now, even though we agree with the trial court's ultimate decision that this is a defamation per se action and that we could proceed, we think where the trial court, at least in part, went wrong is allowing F. Euboy to attack our complaint substantively when he was not even a party to the suit. Clearly, under Illinois law, a non-party cannot attack the substance of the suit. Now, the Stone v. Paddock decision has a situation where I don't think it was Comcast, but whatever newspaper, in that case, when the plaintiff filed a 224 motion directed to the news publisher, in that case, they were allowed to proceed as a party, at least to the extent of the subpoena issued to them under the Rule 224, to do a substantive motion to dismiss under 2-615. And therefore, that court went through that process of what the standard is and what defamation per se is. In that particular case, they found that the statements anonymously posted were not, in fact, defamation per se, defamatory per se. Fine. In that case, the newspaper was a party to the extent of having been served and told, you have to turn this information over. Here, in this case, Comcast, who has clearly indicated it's a matter of the record that they have one person that they have, that they provide Internet services to, a real person, have the name and address, and, in fact, they are ordered to maintain that while this case is all pending. They could have taken the time to file a motion and attack our complaint based under Rule 224. Why would they have done that? What would have been their interest in doing it? I mean, what interest would they have as opposed to the subscriber? Well, first, they would have had standing to do so, Judge. Secondly, Why would they ever have done it? Well, in comparison to, for example, the Stone v. Paddock case, in that case, they believed that the language was not defamatory per se and proceeded thus in a motion to dismiss. Why Comcast did or didn't do what they did beyond that, I don't know. Their position was under federal law. They couldn't turn over the information to us without a direct court order, which is set forth in the record. So I'm not sure why they didn't. I would operate or I would posit to the court that they did not believe this language or they believe this language is defamatory per se and did not feel that they should take the time to spend time and money to attack our lawsuit because they felt the same way we did. Now, I don't want to go outside the record here, but that would be my argument to your honor. I ask the question. Okay. Thus, I don't believe since they were a non-party that was not they were not the third party who was served with the subpoena that they ever had. If you boy ever had any standing to even attack the complaint, the trial court should not let them proceed according accordingly. Now, it was called a motion to quash. But in fact, it was a motion to dismiss under 2-615. There is no question that the basis set forth in all of the briefs and memorandum filed with the court that that is F.U. Boy's position. Yet won't call it that. And the law is very clear and is well settled in Illinois that if you file a motion other than challenging jurisdiction in the trial court, specifically I cite to at least two cases in my brief that says specific to motions to dismiss or motions attacking the complaint that you have submitted yourself to the jurisdiction of the court. We have been operating now for two years and in particular state trial court level for over a year against this person who gets to hide behind the identity yet attack our complaint substantively, which is fundamentally unfair. This is not the case, and I think your Honor addressed this to Mr. Fagan earlier. F.U. Boy has taken the position that they are a fictitious entity and therefore this is a nullity, our complaint. That is ludicrous. F.U. Boy has a counsel of record. F.U. Boy has attacked us and said I deserve First Amendment protection. The case, the boxes case cited by counsel F.U. Boy relates to non-existent a non-existent entity. Justice Carmeier in the, if I can remember the case, the Santiago case. Versus Bliss. Versus Bliss. Santiago versus Bliss. Yes, Your Honor. Thank you. In that case lays this all out. They're dealing with let's say LLC, a limited liability company that doesn't exist. You can't sue Andrew T. Smith Company if it doesn't exist. Or a corporation. Same situation. However, a person that is hiding behind a pseudonym so that they can continue to defame someone else. That is not the purpose of the rule. And again, with all due respect to the trial court, I think the trial court should have entered a finding on that. Got it wrong. Seem to in effect, given the court's ultimate rulings, seem to concede that it was not in fact a nullity as counsel would argue. I believe this court has jurisdiction to specifically, given that the issue is before the court, to determine one way or the other. I do not believe under the law that there is any problem suing a person by a pseudonym when, especially in this case, due diligence. I mean, my God, two years of trying to find out who the person is who made this statement. Getting to the crux of the matter. F.U. Boyd would like to or has taken the position that this is somehow hyperbole, political hyperbole. I would posit to your honors, if F.U. Boyd had posted Bill Hadley is a child molester who lives next door to a school just waiting to be exposed or revealed. I would be very surprised if this court said that's not defamatory per se. I strongly disagree with counsel in his reference to the one case saying, well, if you knew, and this was a discussion we had with you, Justice South, is, well, you have to accuse them of committing a crime or they have to have been convicted versus charged. There's a difference. That's not what that case says. In that case, it was almost like a fair report privilege. Someone had been arrested by that person's name and they were referring to the charges. And they said, no, that's not defamation per se. Well, in that case, they're looking at this arrest report. They're looking at the publication. That is a different situation. In this case, hiding behind the use of the word Sandusky at the time this was all, as counsel and F.U. Boyd seemed to concede, all of this is right there in everyone's faces that's paying attention at all. Clearly had raped, sexually molested dozens of little boys and only connected to Penn State University, but also connected to his charity to assist young boys. Clearly someone that by any reasonable standards we would view, the community would view as disgusting. You know, it's the old adage that a murderer can say, look, I may have committed murder, but I know child molester would apply here. I mean, it doesn't get much worse than that. Hiding behind that use of the word Sandusky in context with that, the view from Empire, waiting to be exposed, meaning at any time, and the situation where then you're talking about hundreds of past victims at this elementary school or potential victims or parents walking by with their children and that this wouldn't be defamatory, that this wouldn't somehow damage Mr. Hadley's reputation. It's just beyond the realm to me that you couldn't reach that conclusion. And clearly the clear intention here was by the use of that term at that time, Sandusky, was to accuse my client, in fact, of being a child molester. And if that isn't defamatory per se under Illinois law, I don't know what is. Counsel said, well, that's so long ago and nobody remembers. Well, I just picked up the newspaper a little over a week ago. Associated Press story about Sandusky, the convicted child molester at this point, or child sexual abuser, regarding fighting his pension. Your Honors may have seen the story. I mean, again, it was in national headlines. Counsel, with all due respect, that's well beyond your record. Thank you, Judge. You want to address the issue of the statements being made on the Internet, and is there a lowered expectation because this statement was made about a politician during the course of a political campaign that there would be a lowered expectation that it would be defamatory per se? Absolutely, Judge. I strongly disagree. First of all, I don't think because someone puts their Go ahead. We'll give you additional time also. I don't believe just because someone puts themselves out in the political arena that they then automatically can be called a child molester, murderer, or any other thing. There isn't some total protection on the First Amendment. In fact, the case is out there because for so long it just, well, anybody can say anything on the First Amendment. That's the real reason for the case law is what are the limitations? That's really what the case law is about because otherwise there wouldn't be this free-for-all. In fact, given the bullying and all that goes on in the cyber world, I disagree with counsel when he made the comment that he thinks it's a lower standard. I totally disagree. I don't think where you post it, where you publish it matters. This was intentionally published by F.U. Boyd. If F.U. Boyd had typed up on his computer and printed out some literature and handed it out to people on the street or mailed it somewhere, if it's defamatory per se, that's publication. If it was a reporter putting it in a newspaper or if the newspaper's article had been defamatory per se and then they posted that article on their Internet site, they are not protected. You don't think that a blog is generally understood to usually contain hyperbole? No more than anything else. I mean, it may be generally understood, but it doesn't mean that you get total protection. If a statement is defamatory per se, you're not protected because of where you published it. So, yes, it may be that a common knowledge or usage that a website or Facebook or something like that might in fact have more frequent language of that sort, but that doesn't make it right. That doesn't make it protected by the First Amendment. Well, if this had been on a page that was specifically labeled or entitled rants and raves, would that change what you said? Absolutely not, Your Honor. Defamation per se is not protected by the First Amendment. That is the well-settled law, and I do not believe, and there is no case cited to support that, that just because you posted it in one place or published it in another is protected by the First Amendment if it's defamatory per se. Actually, I would posit to the Court this. You know, that's posted on a website. As counsel put in one of his briefs that it was up and then the newspaper, after an X number of days, had pulled it down, or at least speculated that. Well, I would posit this. The things put out there in the netherworld where people are emailing on and on and on, who knows if, you know, down the road then, that's not permanent, more permanent than the newspaper that's thrown in the trash, the piece of paper, versus on the Internet. If anything, the ramifications are far much easily expanded to more publication that just a random Google search may pull that up. And for Mr. Hadley, whether kids or grandkids or anything else that he may have in the future and does, just happens upon, I'm going to pull up dad or grandpa's name, Hadley, and all of a sudden is Hadley's a child molester. That could be out there. I would say that there's more potential damage because it's on a website, because it was posted on the Internet, because there's easier access, and thus those same rules should apply. And maybe more so because of the ease with publication, because if I say to myself in front of my mirror that Hadley's, you know, I read the paper and I say to myself, Hadley's the next Sandusky waiting to happen, or waiting to be exposed, there's no publication. I go out screaming at the top of my lungs to every person I see, libel. I go out putting it in print and publishing it out there. I sit at home and write it out to myself and never give it to anybody, no publication. I get online and put it on my website, post it on my blog, post it on my Facebook page, although I don't tweet, Twitter, whatever vehicle you use, I do not believe there's case law that says, okay, but that's okay. As long as you're using this, you can say anything you want about anybody. That cannot be the law, judge, and that should not be the law. I would, if I could just add one rule of the council a couple of times referred to, well, that's why the federal court dismissed the case against gatehouse, but the gatehouse case was dismissed because of, if I say it correctly, it's the Federal Communications Act, Communications Decency Act, I think it's CDC. And that provides immunity to internet service providers. Now, I disagree with the court's decision in that case as far as it being gatehouse's website, but the point to that is that is different if AOL provides the service and someone posts something like F you boy did. Okay, I understand. AOL is just a vehicle for them to be able to post stuff. They're not the ones creating it. That is why the gatehouse thing and the website issue versus F you boy created this, there's been no denial of it, and put it out there, posted it, published it on that website. That is entirely different than you should be able to put anything out there that you want to about anybody at any given time, even if it is defamatory per se. I would respectfully request that the court affirm the trial court's decision and find as well that the language used by F you boy was in fact defamatory per se and let us move along. I have another question. You did somewhat allude to it, but more specifically, in so many words, why does it matter or not matter that Mr. Sandusky was only charged versus convicted at the time the statement was made? I think it depends on the context. I don't think the law is that if you say, for example, if the police department arrests somebody, okay, if you say the police department arrests somebody and he's charged with blah, blah, blah, okay, whatever, let's say murder, versus you're posting out there or publishing out there that because he was arrested, he's a murderer or he's a murderer. He was arrested. You're stating a more specific fact versus he's convicted of something. In fact, I think it's the Catalano case from the late 70s or Illinois Supreme Court said you don't have to allege with particularity to the extent of a criminal indictment for it to be defamatory per se. So you call someone a murderer and they're not, presumably. You call someone a child molester. You don't have to have specific language in there that whoever they're referring to is convicted or charged or anything else. If you call them, that's the key. It's what you're saying about them. Does it matter that in December of 2011 that, I want to put this, you know, Mr. Sandusky was arrested. And I frankly don't remember exactly what month that happened. But that story just didn't leave the press. And then there, it seemed like every couple of days more and more people came forward. And then perhaps the linchpin in the pre-arrest or, anyway, was when the assistant coach came forward and said, you know, and I turned away but I saw these things and that put it. Does that matter that there is ongoing coverage about these issues? Does that make it more likely that when you say a Sandusky that it is associated with this type of conduct or not? In other words, if, you know, if John Doe just, some guys gets arrested, it's on the news. Some guys arrested for an allegation of some type of child molestation. And that's the end of it. It goes away. It's not on the 5 o'clock news every day for weeks. Does that matter? And you see what I'm driving at? Does it matter to the implication of he's a Sandusky? It's the last argument of the day. What can I say? My questions are getting a little garbled. But my point is, does it matter here because this was national news day after day after day after day versus a situation where someone is on the news one day is arrested for child molestation, something horrific. And then it goes away. So the identification of the word Sandusky with the crime, does it matter or is that context relevant? I would say absolutely. I mean, if, I mean, can I clarify in my head, as far as let's say John Doe was arrested for child molestation, boom, it's just there one day and it's gone. And then Joe Smith, two weeks later, I don't know, he's running for office and someone says, oh, he's the next John Doe over here. They're going to go, who are you talking about? Right. Versus here when it's day in and day out and day in and day out and in the context of what was put in the entire, it's not one word isolated, it's in the entire context of what was put, referenced the waiting to be exposed, meaning reveal at any time, referenced empire, then that use of, I would say the intended use, the clear intention here was to say Bill Hadley is like Sandusky, who we all know is in the news every day as a child molester. That was the clear use. So yes, I absolutely would say that that in this context is the clear application is that has an extreme effect on the situation at the time. Most people wouldn't know the legal process as we do as attorneys and judges, right? The difference between someone, you know, being charged in a bill of indictment and then, you know, being tried in a jury trial. The legal details really wouldn't be known by the public, but rather, as you just explained, the degree of heightened publicity associated with the charge of child molestation is really what people are focused on and the reasonable understanding of that. Is that right? Yes, I agree. I just took one step further than that. I think that the reaction isn't, oh, well, he's presumed innocent. The reaction is, oh, my God, every day it's another kid. He's a child molester. And that's the reaction of the public, the general public. Any other questions? Okay. Thank you very much, Mr. Scott. Mr. Fagan. Thank you, Your Honor. Just to begin with, if indeed this statement, which was up for about five days, harmed Mr. Hadley's reputation, he went on to win a primary two months later to win a general election and tended to be elected by his peers as the chairman of the Republican Party. And is that what we're to look at, counsel? Well, as part of the context of what the political situation was at the time, as I said... But at the time was before he won the election. Yes. Right. So I don't know that we can sort through that. So are you saying that just because he won the election, there are no damages here? No. Well, I don't think there are any damages, Judge, at all, because I don't think that this was defamation per se, nor do I think anybody believed that the comment suggested that Mr. Hadley, and even if it did, that they believed it at all because of the context of the comment. Judge, I have a couple of cases that suggest, a statement suggesting someone had been arrested, charged with rape, did not support a defamation per se claim. That was Trembois v. Standard Railroad Equipment Company. Also look at Adams v. Sussman at Hertzberg Limited. The entire standing argument, Judge, I'm not going to spend much time on that at all, but it's just frankly without any basis in law or fact. If the court accepts the fact that people have a First Amendment right to anonymously comment upon political campaigns, that right has to have some way of being protected. And if the person who holds the anonymity does not have the right to come into court and protect it, then it's a useless right. It's without any legitimacy whatsoever. It's one of the reasons that the federal court requires the Internet provider to inform the subscriber that this subpoena has been received and that they have now ten days in which to do something about it or they're going to honor it. So the question as to whether or not subscriber Doe could come into the court and file a motion to quash is quite frankly, I think, incredibly well settled law. The reason that the motion to quash addressed the 2615 standard is because that's the standard under Rule 224. I mean, it's painfully obvious. Now, whether my opponent wants to call it a de facto motion to dismiss, it was not a motion to dismiss. It was a motion to quash. And there was no general appearance that was made. That's it, Judge. Okay. Well, you've both done an excellent job. Thank you. Counsel, we appreciate it at this time. We will take the matter under advisement and render a decision in due course. Court stands adjourned for the day. Thank you.